OHIO BUREAU OF WORKERS' COMPENSATION, Appellant,

v.

KEY BANK NATIONAL ASSOCIATION, Appellee.

[Cite as *Ohio Bur. of Workers' Comp. v. Key Bank
Natl. Assn.* (2000), 140 Ohio App.3d 698.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 00AP–404.

Decided Dec. 26, 2000.

---

2. *United States v. Tateo* (1964), 377 U.S. 463, 84 S.Ct. 1587, 12 L.Ed.2d 448.

*Carlile, Patchen & Murphy, Michael H. Igoe* and *David M. Karr*, Special Counsel, for appellant.

*Thompson, Hine & Flory, L.L.P.,* and *John T. Sunderland,* for appellee.

---

PETREE, Judge.

On October 1, 1986, Doehler–Jarvis Division of Farley Metals, Inc. ("Farley"), a self-insured employer under Ohio's workers' compensation system, opened a $1.375 million, twelve-month certificate of deposit ("CD") with The Toledo Trust Company, defendant Key Bank's predecessor in interest.[1] The CD was nonrenewable and bore the designations "nonnegotiable" and "not-transferable." In October 1986, Farley delivered the original CD to plaintiff, Ohio Bureau of Workers' Compensation ("BWC"), together with documents captioned "Assignment," and "Security Agreement," both dated September 29, 1986.[2] Farley delivered these three documents to BWC as security for the payment of workers' compensation claims in the event Farley defaulted on its obligations to injured workers arising between October 1, 1986 and September 30, 1987. BWC did not notify Key Bank that it had possession of the CD and/or that it claimed an ownership interest in the CD.

The CD matured on October 1, 1987. BWC made no attempt to renew the CD after its maturity date. Key Bank paid the CD to Farley in two installments— the bulk of the funds on October 2, 1987, and a final payment on October 6, 1987.

Because Farley defaulted on its obligations as a self-insured employer for the period between October 1, 1986 and October 1, 1987, BWC paid the claims out of the self-insured employers' portion of the surplus fund. To recoup the funds it paid on behalf of Farley, BWC, in April 1998, presented the original CD to Key Bank and made a demand for payment thereon. Key Bank refused payment.

On May 12, 1998, BWC filed a complaint against Key Bank alleging that it was entitled to the proceeds of the CD. Key Bank moved for summary judgment, asserting, in part, that BWC's claim is governed by the six-year statute of limitations in R.C. 1109.69(F) and is barred thereunder because BWC did not assert its claim within the time period for which Key Bank was required to retain records on the CD. BWC filed its own motion for summary judgment, asserting

---

**1.** It is undisputed that the entity now known as Key Bank acquired The Toledo Trust Company and is its successor in interest. As such, this opinion will refer to the bank as Key Bank no matter what its formal name was at times pertinent to the instant appeal.

**2.** BWC was substituted as plaintiff for the Industrial Commission of Ohio by entry dated February 3, 2000. This opinion will refer to the entity claiming an interest in the CD as the BWC, without distinguishing between BWC and the Industrial Commission.

that its action is governed by the six-year statute of limitations set forth in R.C.1303.16(E), but is not time-barred thereunder because it did not make a demand for payment on the CD until April 1998. By decision filed March 3, 2000, the trial court determined that BWC's claim was barred under both statutes of limitations. By judgment entry filed March 10, 2000, the trial court dismissed plaintiff's claim with prejudice. BWC has filed a timely appeal, asserting a single assignment of error for our review:

"The trial court erred by granting summary judgment in favor of appellee because it misapplied the statute of limitations and therefore improperly failed to consider the merits of appellant's claims."

Civ.R. 56(C) provides as follows:

"* * * Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor."

Thus, summary judgment is appropriate only where the evidence before the court demonstrates that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. *Tokles & Son, Inc. v. Midwestern Indemn. Co.* (1992), 65 Ohio St.3d 621, 629, 605 N.E.2d 936, 942–943, citing *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 65–66, 8 O.O.3d 73, 73–74, 375 N.E.2d 46, 46–48.

In reviewing a trial court's disposition of a summary judgment motion, an appellate court applies the same standard as that applied by the trial court. *Maust v. Bank One Columbus, N.A.* (1992), 83 Ohio App.3d 103, 107, 614 N.E.2d 765, 767–768. An appellate court reviews a summary judgment disposition independently and without deference to the trial court's determination. *Brown v. Scioto Cty. Bd. of Commrs.* (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153, 1157–1158. Summary judgment is a procedural device to terminate litigation, so

it must be awarded cautiously, with any doubts resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 359, 604 N.E.2d 138.

By its assignment of error, BWC contends that the trial court erred in granting summary judgment in favor of Key Bank on statute of limitations grounds. Specifically, BWC argues that the trial court erred in finding that its claim was time-barred under both R.C. 1109.69(F) and 1303.16(E). Finding no error in the trial court's determination, we affirm.

R.C. 1109.69 defines what records banks must preserve and how long those records must be retained:

"(A) Every bank shall retain or preserve the following bank records and supporting documents for only the following periods of time:

"* * *

"(2) For six years:

"* * *

"(b) Individual ledger sheets or other records serving the same purpose that show a zero balance and that relate to demand, time, or savings deposit accounts, and safekeeping accounts, after date of last entry * * *;

"(c) Official checks, drafts, money orders, and other instruments for the payment of money issued by the bank and that have been canceled, after the date of issue;

"* * *

"* * * Records that are not listed in division (A) of this section and for which the superintendent [of financial institutions] has not designated a retention period shall be retained or preserved for six years from the date of completion of the transaction to which the record relates * * * [.]"

R.C. 1109.69(E) permits a bank to dispose of any such records after retaining them for six years. R.C. 1109.69 also contains a statute of limitations:

"(F) Any action by or against a bank based on, or the determination of which would depend on, the contents of records for which a period of retention or preservation is set forth in division (A) and (B) of this section shall be brought within the time for which the record must be retained or preserved."

As noted previously, Farley opened the twelve-month, nonrenewable CD on October 1, 1986. It matured on October 1, 1987. Key Bank paid the proceeds of the CD in two installments on October 2, 1987 and October 6, 1987. Under any reading of R.C. 1109.69, Key Bank had no obligation to retain records relating to the CD for longer than six years. If R.C. 1109.69(A)(2)(b) or (c) governs—

because a CD is a "time account" or an "instrumen[t] for the payment of money issued by the bank"—Key Bank's record retention obligation expired on October 1, 1992, six years after the "last entry" on the account or the CD's "date of issue." If R.C. 1109.69(B) governs—for all records not designated in R.C. 1109.69(A)— Key Bank's record retention obligation expired on October 6, 1993, six years after the transaction was completed with the final payment to Farley. Either way, under R.C. 1109.69(F), when Key Bank's "period of [records] retention" expired, so did the time for BWC to bring an action against Key Bank.

In *Abraham v. Natl. City Bank Corp.* (1990), 50 Ohio St.3d 175, 553 N.E.2d 619, the Ohio Supreme Court applied R.C. 1101.08(F) (now codified at 1109.69[F]) in a case similar to the instant case and dismissed the claims against a bank as untimely. Abraham opened a passbook savings account in 1969. The passbook contained the notation that the passbook must be presented when money was deposited or withdrawn. Abraham lost the passbook in 1972, but did not notify the bank of the loss. The passbook's last entry, dated September 30, 1972, showed a $13,000–plus balance. The account closed some time before January 1977, although no one could demonstrate who closed it. Abraham found the passbook in 1985, and in 1986 requested that the bank pay her the amount shown in the passbook. After the bank refused, Abraham filed a lawsuit. The court held that Abraham's claim was time-barred under R.C. 1101.08(F). In so finding, the court reasoned that the statute required the bank to retain records relating to Abraham's account only for six years, or until January 1983 at the latest. After that date, any records relating to the passbook could be destroyed in accordance with R.C. 1101.08(E) (now codified at 1109.69[E]). The court held that pursuant to R.C. 1101.08(F), Abraham's claim against the bank must have been brought within the period for which the bank was obliged to retain its account records. Because Abraham sued three and one-half years after the retention period expired, her claim was time-barred.

BWC argues that *Abraham* is distinguishable because its claim depends solely on the CD itself and no other bank records. We disagree. Abraham maintained that R.C. 1101.08(F) did not apply to her action against the bank because it was not one based on, or the determination of which would depend upon, the contents of the bank's internal records. Rather, Abraham argued that her passbook, which demonstrated no activity in the account after 1972, and her deposition testimony that she neither withdrew the funds nor authorized anyone else to do so, constituted sufficient evidence for the case to proceed past summary judgment. In essence, Abraham contended that the only record that mattered was her passbook. The court disagreed:

"* * * The intent and language of R.C. 1101.08(F) are clear. A bank would be foolish to destroy its records after six years in reliance on R.C. 1101.08(E)

without the assurance provided in R.C. 1101.08(F) that it will not thereby leave itself open to litigation without the documents necessary to defend itself." *Abraham* at 177, 553 N.E.2d at 621.

The court determined that the bank's internal documents were crucial evidence, without which the bank was unable to defend itself in the litigation. The court held that because R.C. 1101.08(E) authorized destruction of those records, R.C. 1101.08(F) applied to the action and mandated its dismissal.

Similarly, Key Bank's ability to defend BWC's claim requires the documentation that existed in October 1987 when the funds were paid out. R.C. 1109.69(E) authorized Key Bank to dispose of that documentation, at the very latest, in 1993. Pursuant to *Abraham*, R.C. 1109.69(F) mandates dismissal of BWC's claim.

The Sixth Circuit Court of Appeals followed *Abraham* in *Bucheit Internatl, Inc. v. Ameritrust Co. N.A.* (C.A.6, 1997), 106 F.3d 400, unpublished opinion, 1997 WL 21196. In that case, Bucheit and a Saudi Arabian prince were involved in a dispute over a construction agreement. The dispute was settled when Bucheit caused its banks to issue an irrevocable letter of credit to the prince. Thereafter, the banks received a request by the prince for payment on the letter of credit. The request was accompanied by certain specified documents. After examining the documents and determining that they conformed to the specifications of the letter of credit, the banks paid the prince. Eight years after that payment, Bucheit sued the banks, claiming that the banks paid the funds without examining the documents and without ensuring compliance with the terms of the letter of credit. Following *Abraham*, the court held that Bucheit's claim was time-barred by R.C. 1109.69(F).

Like Abraham, Bucheit maintained that R.C. 1109.69(F) did not apply to its claim. Specifically, Bucheit argued that the statute bars only claims where the records are actually destroyed in reliance on the statute and that there was no evidence that the records had actually been destroyed. The court disagreed, finding that the statute did not require actual destruction of documents. Rather, the court found that because R.C. 1109.69 explicitly stated the period for which banks must maintain records and that all claims relating to those records must be brought within that period, Bucheit's claim, filed outside that time period, was barred by the statute of limitations. The court stated:

"The language of Ohio Rev.Code Ann. 1109.69(F) is clear. If determination of the cause of action depends upon the bank records, the statute applies. *Abraham*, 553 N.E.2d at 621. Bucheit alleges [the banks] did not fulfill [their] obligation with respect to the letter of credit. The letter of credit and supporting documents are bank records expressly named in Ohio Rev.Code Ann. 1109.69(A)(2)(c) and must be kept for six years. Section 1109.69(E) allows destruction of those records after the period set forth in section 1109.69(A)(2)(c).

Section 1109.69(F) mandates that an action dependant [*sic*] on those records be brought within six years." *Id.*

█ The instant case requires the same result. BWC's claim is based on a CD, which is a bank record expressly named in R.C. 1109.69(A) and/or (B) and for which Key Bank was obligated to keep for six years. BWC alleges that Key Bank did not fulfill its obligation to BWC because it paid the CD to Farley instead of BWC. R.C. 1109.69(E) permitted the destruction of records pertaining to the CD on October 6, 1993, six years after final payment thereon. Pursuant to R.C. 1109.69(F), any claim BWC had against Key Bank in relation to the CD also expired on October 6, 1993. Accordingly, we cannot find that the trial court erred in finding that BWC's claim was time-barred by application of R.C. 1109.69(F). Similarly, we find no error in the trial court's determination that BWC's claim was time-barred under R.C. 1303.16(E).

Initially, we note that R.C. Chapter 1303 applies only to negotiable instruments. R.C. 1303.02(A). Whenever it is used in R.C. Chapter 1303, the term "instrument" means "negotiable instrument." R.C. 1303.03(B). Thus, R.C. 1303.16(E) applies only if the CD at issue in this case is a negotiable instrument. We find that it is not. R.C. 1303.03(J) defines a CD as "an instrument containing an acknowledgement by a bank that a sum of money has been received by the bank and a promise by the bank to repay the sum of money." R.C. 1303.03(D) expressly excludes the CD from the definition of negotiable instruments. That section provides that "[a] promise or order other than a check is not an instrument if, at the time it is issued * * * it contains a conspicuous statement, however expressed, to the effect that the promise or order is not negotiable * * *." As noted previously, the words "nonnegotiable" appear conspicuously on the face of the CD; thus, it is not a negotiable instrument and R.C. 1303.16(E) does not apply.

█ Assuming, *arguendo*, that the CD is a negotiable instrument, R.C. 1303.16(E) bars BWC's claim. That section provides as follows:

"An action to enforce the obligation of a party to a certificate of deposit to pay the instrument shall be brought within six years after demand for payment is made to the maker, but if the instrument states a due date and the maker is not required to pay before that date, the six-year period begins when a demand for payment is in effect and the due date has passed."

BWC argues that under R.C. 1303.16(E), only BWC, as "the party entitled to enforce the instrument," could have made the demand that would trigger the statute of limitations. Accordingly, BWC contends that the statute of limitations could not have been triggered before April 1998 when it made its demand for payment. BWC's position is belied by the express language of R.C. 1303.16(E),

which provides that its limitations period "begins when *a* demand for payment is in effect and the due date has passed." (Emphasis added.) The statute contains no language referring to "the party entitled to enforce the instrument," and BWC cites no authority for reading this language into the statute.

Furthermore, we are unpersuaded by BWC's contention that such a reading of the statute could conceivably permit "any person on the street" to demand payment on a CD to which he or she had no entitlement, thus triggering the statute of limitations. In the instant case, it is undisputed that Farley opened the CD in 1986 and thereafter made a demand for and was paid the proceeds of the CD within days after it matured in October 1987. It was entirely reasonable for Key Bank to pay out the proceeds to Farley, given that the CD was issued in Farley's name, the maturity date had passed, and BWC never made any attempt to notify Key Bank of the assignment or that it claimed an interest in the funds.

In short, this court finds that the six-year statute of limitations, under either R.C. 1109.69 or 1303.16, began to run in October 1987 and expired in October 1993, more than four and one-half years before BWC asserted its claim. While this court is mindful of the harsh result suffered in applying either of these statutes of limitations, such harshness is arguably mitigated by BWC's own actions in failing to notify Key Bank of the assignment and its possession of the CD.

For the foregoing reasons, BWC's assignment of error is overruled and the judgment of the Franklin County Court of Common Pleas is hereby affirmed.

*Judgment affirmed.*

BOWMAN, P.J., concurs.

KENNEDY, J., concurs in judgment only.