**BRENTLINGER, Appellant,**

v.

**BANK ONE OF COLUMBUS, N.A., Appellee.**

[Cite as *Brentlinger v. Bank One of Columbus, N.A.,*
150 Ohio App.3d 589, 2002-Ohio-6736.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 02AP–74.

Decided Dec. 10, 2002.

James W. Jordan, for appellant.

David F. Carruthers, for appellee.

LAZARUS, Judge.

{¶ 1} Plaintiff-appellant, Waveline Brentlinger, appeals from the December 21, 2001 decision and entry of the Franklin County Court of Common Pleas granting the motion for summary judgment of defendant-appellee, Bank One of Columbus, N.A. ("Bank One"), and denying appellant's motion for summary judgment. For the reasons that follow, we reverse.

{¶ 2} The following facts are taken from the materials attached to the parties' motions for summary judgment.

{¶ 3} Appellant is a housewife who has never been employed outside the home, except to care for some elderly people. In the 1970s appellant opened a checking account, a savings account, and a safe deposit box at Bank One.

{¶ 4} Appellant always dealt with Cecelia Pecko, the manager of that particular Bank One branch. Appellant considered Pecko a friend whom she trusted. Appellant never conducted business at the bank when Pecko had the day off; rather, appellant would wait until Pecko was available after dealing with other customers; then, appellant would ask Pecko to deposit her money or withdraw it.

{¶ 5} Appellant had $20,000 that had been given to her by her aunt. For ten years, appellant had kept the money in cash at home and had later transferred it to her safe deposit box. When appellant told her son about the money, he advised her to invest it.

{¶ 6} Appellant knew nothing about investing and had never invested money before. She went to Bank One and asked Pecko what to do with the money. Pecko advised appellant to put her money into a certificate of deposit. Appellant asked Pecko to explain what that was. According to appellant, Pecko told her that the money would be put into a Super Seven certificate, that it would earn interest, that the interest would be added to appellant's money, and that the money plus interest would roll over automatically every week. Pecko also told appellant that she could keep the certificate of deposit as long as she wanted and that she would not have to pay tax on the interest.

{¶ 7} On October 4, 1982, appellant gave Pecko $20,000 to put into the certificate of deposit. Appellant received a certificate and a receipt for the deposit, which she placed into her safe deposit box at Bank One. She kept it until 1999.

{¶ 8} Appellant never received any statements from Bank One about the certificate of deposit or the interest earned. Appellant's home address, where she has lived since 1941, is on the certificate of deposit. Appellant has received other interest statements, checking account statements, and bills for her safe deposit box that Bank One has sent to her home address.

{¶ 9}   Appellant never withdrew money from her certificate of deposit, and Bank One never paid her any money from her certificate of deposit.

{¶ 10}   In July 1999, appellant found her certificate of deposit and deposit receipt in her safe deposit box.   Pecko was not working at appellant's branch, so appellant went to her attorney, Kenneth J. Spicer, to get his advice.   Appellant and Spicer took the certificate to Bank One to withdraw the money.   A Bank One representative told them that information on the Super Seven accounts was no longer kept in the bank's computer system but that he would check on the account.   After that date, neither appellant nor Spicer was ever given any information about the certificate of deposit.

{¶ 11}   The certificate attached to appellant's complaint states:

{¶ 12}   "2. The term of this deposit is seven (7) days and the interest is payable at maturity.   Interest is computed by the simple interest method.

{¶ 13}   "* * *

{¶ 14}   "4. This is an automatically renewable deposit.   Unless withdrawn within one (1) business day after the maturity date, it will be renewed automatically for a period of time equal to the initial maturity period, and thereafter for additional successive like periods of time.   Each renewal will be for the same period as the original term.   The interest rate and method of calculation at such renewal will be that as set forth above, or such other rate of which notice is given by BANK ONE prior to maturity.   BANK ONE reserves the right not to renew this deposit upon not less than seven (7) days prior written notice to Depositor. * * *

{¶ 15}   "* * *

{¶ 16}   "6. This deposit is not negotiable and is not transferable, if issued to and held by a natural person * * *."

{¶ 17}   Bank One responded that it "appears as if" appellant had originally deposited $20,000 with Bank One in an automatically renewable certificate of deposit and that the account had generated interest.   By means of the affidavit of Pecko, Bank One claimed that no records of the account existed with Bank One and that the records were destroyed.   Bank One further claimed, based upon the personal knowledge and belief of Pecko, that the account had become inactive at least six years ago and that the account was closed more than six years ago.

{¶ 18}   On July 27, 2000, appellant filed a complaint seeking an accounting and claiming breach of contract, breach of fiduciary duty, and conversion.   Appellant also sought punitive damages and attorney fees.

{¶ 19}  The parties filed cross-motions for summary judgment.  On December 21, 2001, the trial court granted summary judgment in favor of Bank One and denied appellant's motion for summary judgment.

{¶ 20}  The trial court reasoned that appellant's claims were barred by R.C. 1109.69(E), which permits a bank to dispose of obsolete records after six years, and R.C. 1109.69(F), which provides a corresponding statute of limitations for all claims based on subject matter contained within those records.

{¶ 21}  This appeal followed with appellant assigning as error the following:

{¶ 22}  "Assignment of Error 1.

{¶ 23}  "The trial court erred by failing to grant plaintiff-appellant's motion for summary judgment on her claim against defendant-appellee for the breach of its fiduciary duty.

{¶ 24}  "Assignment of Error No. 2.

{¶ 25}  "The trial court erred by holding that R.C. § 1109.69 was applicable to this case by reason of defendant-appellee to comply with Evidence Rule 803.

{¶ 26}  "Assignment of Error 3.

{¶ 27}  "The trial court erred by finding that R.C. § 1109.69 does not violate Section 16 of Article I of the Ohio Constitution nor the 14th Amendment to the federal Constitution."

{¶ 28}  Civ.R. 56(C) states that summary judgment shall be rendered forthwith if:

{¶ 29}  "[T]he pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

{¶ 30}  Accordingly, summary judgment is appropriate only where (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party. *Tokles & Son, Inc. v. Midwestern Indemn. Co.* (1992), 65 Ohio St.3d 621, 629, 605 N.E.2d 936, citing *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 65–66, 8 O.O.3d 73, 375 N.E.2d 46.  "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record * * * which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." *Dresher v. Burt*

(1996), 75 Ohio St.3d 280, 292, 662 N.E.2d 264. Once the moving party meets its initial burden, the nonmovant must then produce competent evidence showing that there is a genuine issue for trial. Id. Summary judgment is a procedural device to terminate litigation, so it must be awarded cautiously with any doubts resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 358–359, 604 N.E.2d 138.

{¶ 31} Appellate review of summary judgments is de novo. *Koos v. Cent. Ohio Cellular, Inc.* (1994), 94 Ohio App.3d 579, 588, 641 N.E.2d 265; *Midwest Specialties, Inc. v. Firestone Tire & Rubber Co.* (1988), 42 Ohio App.3d 6, 8, 536 N.E.2d 411. We stand in the shoes of the trial court and conduct an independent review of the record.

{¶ 32} In her first and second assignments of error, appellant argues that the trial court erred in relieving Bank One from liability under R.C. 1109.69 because Bank One has not retained records of the account.

{¶ 33} R.C. 1109.69 defines certain records that banks must preserve and how long those records must be retained. In pertinent part, the statute states:

{¶ 34} "(A) Every bank shall retain or preserve the following bank records and supporting documents for only the following periods of time:

{¶ 35} "* * *

{¶ 36} "(2) For six years:

{¶ 37} "* * *

{¶ 38} "(b) Individual ledger sheets or other records serving the same purpose that show a zero balance and that relate to demand, time, or savings deposit accounts, and safekeeping accounts, after date of last entry * * *;

{¶ 39} "(c) Official checks, drafts, money orders, and other instruments for the payment of money issued by the bank and that have been canceled, after the date of issue;

{¶ 40} "* * *

{¶ 41} "(B) * * * Records that are not listed in division (A) of this section and for which the superintendent [of financial institutions] has not designated a retention period shall be retained or preserved for six years from the date of completion of the transaction to which the record relates * * *.

{¶ 42} "* * *

{¶ 43} "(E) A bank may dispose of any records that have been retained or preserved for the period set forth in divisions (A) and (B) of this section.

{¶ 44} "(F) Any action by or against a bank based on, or the determination of which would depend on, the contents of records for which a period of retention or

preservation is set forth in divisions (A) and (B) of this section shall be brought within the time for which the record must be retained or preserved."

{¶ 45} By enacting the six-year limitation period in R.C. 1109.69(F), the Ohio legislature intended to protect banks from having to defend themselves after destroying bank records pursuant to R.C. 1109.69(A), (B), and (E). See *Bucheit Internatl., Inc. v. Ameritrust Co. N.A.* (Jan. 17, 1997), C.A.6 No. 95–4267, 106 F.3d 400, 1997 WL 21196 (unpublished opinion).

{¶ 46} *Bucheit* dealt with a $1.3 million letter of credit that had an expiration date of February 5, 1986, and the funds were paid in December 1985. The lawsuit was not filed against the defendants until 1993 and therefore was time-barred based on the six-year statute of limitations in R.C. 1109.69(F). The plaintiff argued that there was no evidence the records had actually been destroyed, but the court ruled that the letter of credit and supporting documentation were expressly named in R.C. 1109.69(A)(2)(c), that, pursuant to the statute, the bank was required to keep those records for only six years after cancellation, and any action dependent on those records had to be brought within six years.

{¶ 47} Similarly, in *Ohio Bur. of Workers' Comp. v. Key Bank Natl. Assn.* (2000), 140 Ohio App.3d 698, 748 N.E.2d 1189, a self-insured employer opened a $1.375 million, 12–month, nonnegotiable, nontransferable certificate of deposit with the defendant bank's predecessor in interest and delivered the certificate of deposit as security to the Bureau of Workers' Compensation. The certificate matured on October 1, 1987 and the bank paid the funds to the employer on October 2, 1987, and October 6, 1987. The bureau made no effort to renew the certificate of deposit after its maturity date, and demanded payment in April 1998, more than six years after the period during which the bank was required to retain its records on the certificate of deposit. This court held that R.C. 1109.69(E) permitted the destruction of records pertaining to the certificate of deposit on October 6, 1993, six years from the time the bank paid out the funds.[1]

{¶ 48} Finally, in *Abraham v. Natl. City Bank Corp.* (1990), 50 Ohio St.3d 175, 553 N.E.2d 619, the Ohio Supreme Court held that R.C. 1101.08(F) (now 1109.69[F] ) barred the plaintiff's action against the bank because bank records had been destroyed more than six years previously. In *Abraham*, the plaintiff had misplaced her savings account passbook. The last entry in the passbook, dated September 30, 1972, showed a balance of $13,266.83. The plaintiff found

---

1. This court also held that the certificate of deposit was not a negotiable instrument, and therefore the six-year statute of limitations for certificates of deposit contained in R.C. 1303.16(E) should not apply. Id. at 705, 748 N.E.2d 1189. We believe the same result applies here because appellant's certificate of deposit contained express language that it was not negotiable.

her passbook in 1985 and filed a complaint against the bank in May 1986. The plaintiff attributed her late claim of ownership to the fact that she had not received notice that the bank had been acquired in 1973 by BancOhio, which in turn was acquired by National City Bank in 1984. The bank conducted a search of its records and found a January 4, 1977 microfilm list of open accounts on which the plaintiff's account did not appear and concluded the account must have been closed sometime between September 1972, when she last used the passbook, and January 1977. Thus, the bank argued, any records pertaining to the termination of the account would have been generated between January 1977 and destroyed by 1983. The Ohio Supreme Court agreed and further found that the fact that the plaintiff did not receive a Form 1099 with which to report the interest the account would have earned should have alerted her to a potential problem with her passbook account long before she found the passbook.

{¶ 49} In this case, appellant's certificate of deposit is unlike the letter of credit in *Bucheit* and the certificate of deposit in *Key Bank*. By the terms set forth on the certificate itself, appellant's Super Seven certificate of deposit automatically renews every seven days after the initial seven-day maturity date. Appellant still possesses the certificate that had been in her Bank One safe deposit box. Appellant never received written notification as specified in the agreement that Bank One was not renewing the deposit. Appellant has lived at the same address since 1941 and received other mail from Bank One at that address. Therefore, the only reasonable inference one can draw from these facts is that appellant's Super Seven certificate of deposit is still automatically renewing itself every seven days. R.C. 1109.69(E) does not authorize Bank One to destroy the records of an active automatically renewable certificate of deposit, and consequently, Bank One cannot rely upon the destruction of records and R.C. 1109.69(F) to bar appellant's claims.

{¶ 50} Nor does the lack of Form 1099 operate as constructive notice of a problem with the certificate of deposit as it did in *Abraham*. According to appellant's affidavit, appellant was told by Pecko that appellant was not required to pay taxes on the interest generated by the certificate of deposit. Again, according to appellant's affidavit, appellant was an unsophisticated investor who relied on the advice she was given by Pecko at the time she purchased the certificate of deposit.

{¶ 51} Appellant made her demand for payment in July 1999 and brought suit in July 2000. Appellant's claims are therefore not time-barred, and the trial court erred in granting summary judgment for Bank One on that basis.

{¶ 52} Based on the foregoing, appellant's first and second assignments of error are sustained, the third assignment of error is overruled as moot, and the

judgment of the Franklin County Court of Common Pleas is reversed and remanded for further proceedings in accordance with this opinion.

Judgment reversed<br />and cause remanded.

BOWMAN and DESHLER, JJ., concur.