OPINION
{¶ 1} Defendant-appellant/cross-appellee, Sky Bank-Ohio Bank Region, nka Sky Bank (hereinafter "Sky Bank"), appeals the judgment of the Logan County Court of Common Pleas. Plaintiff-appellee/cross-appellant, Maxine F. Spiller (hereinafter "Spiller"), also appeals the trial court's judgment. For the reasons that follow, we affirm the judgment of the trial court.
 {¶ 2} Ms. Roberta Stayrook opened four certificates of deposit with Bellefontaine Federal Savings and Loan Association. The four certificates of deposit included: Savings Certificate No. 4346, in the amount of $5, 000.00 issued on February 13, 1974 to "Miss Roberta M. Stayrook p.o.d. Maxine F. Spiller" (hereinafter "Certificate No. 4346"); Savings Certificate No. 5242 issued on June 10, 1975, in the amount of $3, 000 to "Maxine Spiller p.o.d. Roberta Stayrook" (hereinafter "Certificate No. 5242"); Savings Certificate No. 6059, in the amount of $10, 000, issued on July 31, 1976 to "Maxine Spiller or Roberta Stayrook" (hereinafter "Certificate No. 6059"); and Savings Certificate No. 7256, in the *Page 3 
amount of $25, 000, issued on January 2, 1979 to "Roberta M. Stayrook (p.o.d. Maxine F. Spiller)" (hereinafter "Certificate No. 7256"). (Pl. Ex. 1, 2, 3, 4, respectively).[1]
 {¶ 3} Ms. Stayrook died on February 10, 2002. (Cert. of Death attached to Compl.; Tr. Vol. III, 28-29). Several months after Stayrook's death, Spiller found the certificates of deposit in an envelope after a chest of drawers was moved. (Tr. Vol. III, 61-62). The envelope also contained $2, 500.00 in cash. (Id. at 62). Spiller subsequently presented the four certificates of deposit to Sky Bank, who declined to redeem them.
 {¶ 4} On March 15, 2005, Spiller filed a complaint seeking to require Sky Bank to redeem the four certificates of deposit. Sky Bank filed a motion for summary judgment on June 15, 2006. The trial court denied the summary judgment motion. On January 17 and 18, 2007, a bench trial was held. Both parties subsequently filed post-trial briefs.
 {¶ 5} On February 6, 2007, the trial court filed a judgment entry in which it found, "in favor of the Plaintiff upon the certificate of deposit dated June 10, 1975 in the original face amount of $3, 000" and "in favor of the Defendant upon *Page 4 
the other certificates of deposits on which this claim was brought." The trial court granted judgment in favor of Spiller "in the sum of $26, 832 plus the statutory rate of interest of eight percent per annum from the date of the judgment entry." (JE 2/6/07).
 {¶ 6} On February 9, 2007, Spiller requested findings of fact and conclusions of law pursuant to Civ.R. 52, which the trial court issued on February 22, 2007. The trial court made the following findings of fact:
 1. Plaintiff's exhibit two was a certificate of deposit issued by Bellefontaine Federal in the name of the Plaintiff; under the terms of that certificate it automatically renewed for the same term unless presented for withdraw not later than ten days after the maturity date except at least five days prior to the maturity date the association may give written notice to the depositor that the certificate would not be renewed at the stated rate and will thereafter earn interest at a different rate or will revert to the status of a regular savings account.
 2. Plaintiff is the owner of said cd.
 3. Plaintiff never cashed said cd.
 4. The amount due under said cd is $26, 832.00 as of January 31, 2007.
 5. Plaintiff's exhibits one and four were certificates of deposit issued by Bellefontaine Federal to Roberta Stayrook, pod Maxine Spiller.
 6. Plaintiff's exhibit three was issued by Bellefontaine Federal in the names of Maxine Spiller or Roberta Stayrook.
 7. Roberta Stayrook was the owner or co-owner of Plaintiff's one, three[, ] and four.
 8. Defendant had no active account record of said cds.
 9. There were no active account records of said cds in 1993 for Defendant's predecessor, American Community Bank. *Page 5 
 10. Neither Roberta Stayrook nor Maxine Spiller declared any income from said cds on their federal tax returns.
 11. Bellefontaine Federal cashed certificates of deposit without requiring surrender of said documents.
 12. Sky bank continues to cash certificates without requiring surrender of the document.
 13. Roberta Stayrook lawfully cashed Plaintiff's exhibits one, three[, ] and four for which she was the owner or co-owner.
 14. Defendant is a successor in interest to Bellefontaine Federal.
(Findings of Fact/Conclusions of Law, 2/22/07). The trial court also made the following conclusions of law:
 1. This is an action on contract.
 2. Plaintiff has the burden to prove the formation and breach of contract by a preponderance of the evidence in order to recover damages.
 3. It is not the common law of Ohio that a certificate of deposit over twenty years old is presumed to have been cashed.
 4. Plaintiff sustained its burden as to Plaintiff's two but failed to do so as to Plaintiff's one, three[, ] and four.
 5. Defendant owes Plaintiff $26, 832.00 as of January 31, 2007.
(Id.).
 {¶ 7} It is from the trial court's judgment that Sky Bank appeals and asserts two assignments of error. Spiller also appeals the judgment of the trial court and asserts three assignments of error on cross-appeal. We have combined assignments of error where appropriate. *Page 6 
 ASSIGNMENT OF ERROR NO. I THE TRIAL COURT ERRED IN DENYING SKY BANK'S MOTION FOR SUMMARY JUDGMENT BASED ON THE LIMITATION OF ACTION IMPOSED BY R.C. 1109.69.
 {¶ 8} In its first assignment of error, Sky Bank argues that under R.C. 1109.69, banks are required to retain bank records for certain periods of time, with six years being the longest period of time, and banks are protected from liability once the records have been destroyed. Sky Bank further argues that the All Accounts Listing in 1993 did not contain any account for either Stayrook or Spiller. Thus, Sky Bank argues that, assuming that the accounts closed on December 31, 1992, the six year period of retention would have run until December 31, 1999, and Sky Bank was free to destroy any records on January 1, 2000.
 {¶ 9} R.C. 1109.69 provides in pertinent part:
 (A) Every bank shall retain or preserve the following bank records and supporting documents for only the following periods of time:
 * * *
 (2) For six years:
 * * *
 (b) Individual ledger sheets or other records serving the same purpose that show a zero balance and that relate to demand, time, or savings deposit accounts, and safekeeping accounts, after date of last entry, or, where the ledger sheets or other records show an open balance, after date of transfer of the amount of the balance to another ledger sheet or record; *Page 7 
 (c) Official checks, drafts, money orders, and other instruments for the payment of money issued by the bank that have been canceled, after date of issue;
 * * *
 (h) Signature cards relating to closed demand, savings, or time accounts, closed safe deposit accounts, and closed safekeeping accounts, after date of closing;
 * * *
 (B) The superintendent of financial institutions may designate a retention period of either one year or six years for any records maintained by a bank but not listed in division (A) of this section. Records that are not listed in division (A) of this section and for which the superintendent has not designated a retention period shall be retained or preserved for six years from the date of completion of the transaction to which the record relates or, if the last entry has been transferred to a new record showing the continuation of a transaction not yet completed, from the date of the last entry.
 * * *
 (E) A bank may dispose of any records that have been retained or preserved for the period set forth in divisions (A) and (B) of this section.
 (F) Any action by or against a bank based on, or the determination of which would depend on, the contents of records for which a period of retention or preservation is set forth in divisions (A) and (B) of this section shall be brought within the time for which the record must be retained or preserved.
 {¶ 10} In Brentlinger v. Bank One of Columbus, N.A., the Tenth District held R.C. 1109.69(E) does not authorize the bank "to destroy the records of an active automatically renewable certificate of deposit * * *." *Page 8 150 Ohio App.3d 589, 2002-Ohio-6736, 782 N.E.2d 648, ¶ 49. In that case, the terms of the certificate of deposit provided that the certificate automatically renewed every seven days. Id.
 {¶ 11} In the present case, the four certificates contain language providing that the certificates will be automatically renewed. Thus, we find that the certificates of deposit, like those certificates inBrentlinger, are automatically renewable certificates of deposit. In addition, like the court in Brentlinger, we find the bank was not authorized to destroy the records of active automatically renewable certificates of deposit under R.C. 1109.69. Brentlinger, 2002-Ohio-6736, at ¶ 49.
 {¶ 12} Sky Bank's first assignment of error is, therefore, overruled.
 ASSIGNMENT OF ERROR NO. II THE TRIAL COURT ERRED IN GRANTING JUDGMENT TO SPILLER ON SAVINGS CERTIFICATE NO. 5242. CROSS-APPELLANT'S ASSIGNMENT OF ERROR NO. I The Trial Court erred in granting judgment to Sky Bank on threecertificates of deposit (Plaintiff's Exhibit 1, 3, and 4).
 {¶ 13} Sky Bank argues, in its second assignment of error, that Spiller had to prove that the certificates of deposit have never been paid, and she has no such evidence. Sky Bank argues that there is a presumption of payment rule in Ohio, and in order to rebut the presumption, Spiller had to prove by clear and convincing *Page 9 
evidence that the certificates had not been cashed. Further, Sky Bank argues that Stayrook announced her intention to relocate her investment to Florida when she moved there in 1978, and she had an eighteen month window to redeem the certificates when Spiller did not live with her. Further, Sky Bank argues that neither Stayrook nor Spiller paid taxes on the certificates, and Spiller testified that they never received a single Form 1099 reporting interest during the time Spiller and Stayrook lived together.
 {¶ 14} In her first assignment of error, Spiller argues that there was no basis for the trial court to find that Stayrook had lawfully cashed in three of the certificates of deposit. According to Spiller, she was aware that Stayrook opened the certificates; Stayrook never made any business decision without discussing it first; the Bank never sent 1099's for any of the certificates from their inception; and Spiller never cashed in the certificates.
 {¶ 15} The presumption of payment rule "has been generally described as follows: A presumption of payment arises from a lapse of time-usually fixed at 20 years-between the creation of an obligation and the attempt to enforce it in the courts." Brown v. National City Bank (Feb. 4, 1980), 8th Dist. No. 40384, *3, citing 60 American Jurisprudence 2d Payments, § 133, 706, See Generally Annot, 1 A.L.R. 779.
 {¶ 16} "The presumption of payment rule is a rule of evidence * * *." 73 *Page 10 
Ohio Jurisprudence 3d Payment and Tender, § 88. The presumption of payment "does not bar a suit, but merely shifts the burden of proof to the plaintiff to show nonpayment by clear and convincing evidence."Brown, 8th Dist. No. 40384, *3, citing Boscowitz v. Chase NationalBank (1952), 202 Misc. 1016, 111 N.Y.S.2d 147; Griffith v. MellonBank (2004), 328 F.Supp.2d 536, 542, citations omitted.
 {¶ 17} In Brown, the Eighth District discussed the reason for applying a presumption of payment rule. 8th Dist. No. 40384, at *3. The court stated,
 The underlying basis for the rule of presumption of payment is the avoidance of litigation over claims which time has obscured.
 The presumption rests not only on want of diligence in asserting rights, but on the higher ground that it is necessary, to suppress frauds, to avoid long-dormant claims, which, it has been said, have often more cruelty than justice in them, that it relieves courts from the necessity of adjudicating rights so obscured by the lapse of time and the accidents of life that the attainment of truth and justice is next to impossible.
Id. citing, 60 Am Jur.2d Payment § 134, 708.
 {¶ 18} The presumption of payment rule has been applied by the Ohio Supreme Court. Wright v. Hull (1911), 83 Ohio St. 385, 94 N.E. 813;Brown, 8th Dist. No. 40384, at *3. In addition, the presumption of payment rule has been applied to a passbook savings account.Brown, 8th Dist. No. 40384. Although the presumption of payment rule has not been applied to certificates of deposit in Ohio, the rule has been applied to certificates of deposit under Pennsylvania law. *Page 11 
See Griffith, 328 F.Supp.2d at 542, citations omitted.
 {¶ 19} However, we find it unnecessary to determine whether a presumption of payment rule applies in Ohio as to certificates of deposit. As previously noted, the presumption of payment rule is a rule of evidence that merely shifts the burden to the plaintiff to prove by clear and convincing evidence. Brown, 8th Dist. No. 40384, *3, citingBoscowitz v. Chase National Bank (1952), 202 Misc. 1016,111 N.Y.S.2d 147; Griffith, 328 F.Supp.2d at 542, citations omitted. If the presumption of payment rule does not apply then Spiller would have to prove all the elements of her claim by a preponderance of the evidence. See Ayers-Sterrett, Inc. v. Cilli (Feb.22, 2002), 3d Dist. No. 15-01-09, *2, citations omitted.
 {¶ 20} Since we find that Spiller has met her burden of proof, under either the clear and convincing evidence or preponderance of the evidence standards, as to Certificate No. 5242 but has failed to meet her burden of proof under either standard in regards to Certificates Nos. 4346, 7256, and 6059, we need not determine whether the presumption of payment rule applies to certificates of deposit in Ohio.
 {¶ 21} At the trial, Spiller testified that she came to know Roberta Stayrook in 1935 or 1936, and at one point, Spiller was engaged to Stayrook's brother. (Tr. III, at 32). Sometime in the mid-1960's, Spiller moved to Plainfield, Indiana with *Page 12 
her husband, and Stayrook lived with Spiller and her husband in Indiana for eleven years. (Id. at 32; 38-39). According to Spiller, Stayrook paid $50/week for room and board, and Stayrook owned her own car. (Id. at 39). In 1977, Spiller and her husband moved to Bonita Springs, Florida. (Id. at 32; 40). Stayrook did not initially accompany the Spillers to Bonita Springs; however, after Stayrook retired and Spiller's husband died, Stayrook moved to Florida and lived with Spiller. (Id. at 40). Spiller and Stayrook lived together from the time that Stayrook moved to Florida until Stayrook's death in 2002. (Id. at 42; Cert. of death attached to compl).
 {¶ 22} With regard to financial matters, Spiller testified that she and Stayrook maintained a joint checking account; Spiller took care of that account; and Stayrook and Spiller made financial decisions together. (Id. at 43). Stayrook and Spiller jointly opened a Prudential Account in 1980 with $25, 000 which came from Stayrook's investment. (Id. at 52). According to Spiller, she and Stayrook would put extra money from their joint checking account into the Prudential account about every six months. (Id. at 54). In 1994, Spiller and Stayrook bought a lot for $20, 000, and took the money out of the Prudential account. (Id. at 54-55).
 {¶ 23} Spiller testified that the funds for the four certificates of deposit came from Stayrook's savings bonds. (Id. at 45-47). The certificates were opened by Stayrook. (Id. at 45-47). Spiller was not present when the certificates were *Page 13 
opened, but she testified that she knew about the certificates. (Id. at 45-47; 61). Further, Spiller testified that she was the person who got the mail; that Stayrook did not even have a key to the mailbox; that Spiller opened the mail; and that she never got any correspondence or interest statements on the certificates, even during the initial four year term. (Id. at 56; 58).
 {¶ 24} Stayrook passed away on February 10, 2002. (Cert. of death attached to the Compl.). The certificates were found in October, following Stayrook's death, when Spiller and her daughter, Susan Hollycross, moved a chest of drawers in order to paint and an envelope fell out. (Id. at 61-62). The envelope contained the four certificates and $2, 500 in cash. (Id. at 62). Spiller testified that she was not surprised to find the envelope because Stayrook had told her "if anything ever happened to her, I was to go through everything, not throw anything out until we checked everything." (Id. at 64).
 {¶ 25} Moreover, Spiller testified to the following:
 Q. Are you aware of any time that Roberta Stayrook ever went
 to the bank to cash in the certificates?
 A. No.
 Q. Did she ever tell you she was doing it?
 A. No.
 * * *
 Q. That she was writing to them asking them to do it through the
 mail?
 A. No.
 Q. That you're aware of, did she ever receive a large sum of cash that was explained in any other way to you?
 A. No. *Page 14 
 Q. Is that true for the whole 30 years since they were taken out?
 A. Yes.
(Id. at 66).
 {¶ 26} Rebecca Pennington, a retired vice president of operations at Citizens Federal Savings and Loan in Bellefontaine, Ohio, calculated the value of the certificates. (Tr. I, at 10). Pennington calculated the value based on the terms of the certificate for the initial period, and by looking at rates offered by her institution on applicable dates to calculate the value of the certificates as if they had remained open through August 31, 2006. (Tr. I, at 10; 21-24). Pennington calculated the value of the certificates to be the following amounts: $42, 576.44 for Certificate No. 4346; $26, 479.16 for Certificate No. 5242; $84, 512.73 for Certificate No. 6059; and $158, 396.08 for Certificate No. 7256. (Id. at 26; 30; 34; Pl.Exhibit 7).
 {¶ 27} Patricia Brewer, Lori Householder, and Jennifer Schwaderer, are current or retired employees of Sky Bank, who testified regarding certificates of deposit. (Id. at 58; Tr.Vol.II at 6-7; Tr. Vol.III at 5-6). Schwaderer and Householder testified regarding their search for the pertinent certificate accounts. Schwaderer testified that she searched on Sky Bank's computer for the accounts by names, account numbers, and social security numbers, and she did not find the accounts. (Vol. III. at 8-9). *Page 15 
 {¶ 28} According to Householder, a person in her department was given the names and accounts numbers to search for the certificates and located nothing. (Tr.Vol II at 21). Householder also researched the certificates, including a search based on all the account numbers and names. (Id. at 22). During her search, Householder located a box of film of closed and open signature cards from Colonial Federal and found nothing in any of the signature cards regarding the accounts.[2] (Id. at 22). Householder did not find any records relating to the four certificates. (Id. at 23).
 {¶ 29} An All Accounts Listing for American Community Bank for the year 1993 was found. (Id. at 24).[3] An All Accounts Listing, lists the name of the client, any accounts they have, and the interest that was paid to them in 1993. (Id. at 25). The listing is prepared for "IRS reporting for the end of each year, for anyone that has earned interest on an account or paid in on a loan." (Id. at 25). According to Householder, if an account is not reflected on an All Accounts Listing, then the account has been closed. (Id. at 26). Further, Householder testified that there was no listing on the All Account Listing for either Spiller or Stayrook. (Id. at 27). On cross-examination, Householder testified that she did not find: a copy of a check showing payment to Spiller or Stayrook; a copy of the *Page 16 
signature card; an affidavit of lost certificate; or any copies of 1099's being sent to either Spiller or Stayrook. (Id. at 32-33).
 {¶ 30} Both Brewer and Schwaderer testified that individuals could close certificate accounts without the original certificate, as long as the person could prove who they were and that they were entitled to payment. (Tr. Vol. I at 69; Tr. Vol. III at 5-6). Further, Brewer testified that the bank did not require an affidavit if someone was redeeming a certificate without the actual certificate. (Tr. Vol.I at 63). Brewer testified that she had no knowledge that any of the certificates have been paid but testified on cross-examination, that in her opinion, the certificates of deposit had been redeemed. (Id. at 58).
 {¶ 31} However, Charles Earick, who was employed at Citizens Federal Savings and Loan for thirty five years, testified that "[i]f there is a lost passbook or a lost certificate, we would have an affidavit of lost passbook or certificate signed and retain that. And the recommended retention period is indefinite for the affidavit." (Tr.Vol. III at 24). On cross-examination, Earick acknowledged that he had no formal education in banking, he has never worked at any other financial institutions, and he never received any training on record retention requirements. (Id. at 24-25). Further, Earick testified on cross-examination:
 Q. * * * And, of course, with regard to the retention period for a lost certificate or an affidavit of lost certificate, that would presume that such an affidavit of lost certificate had ever existed. *Page 17 
 A. That's correct.
 Q. And that would presume that the savings and loan or bank had required such an affidavit of lost certificate.
 A. Correct.
(Id. at 26).
 {¶ 32} Lori Householder, Jennifer Schwarderer, and Patricia Brewer, also testified regarding the closing of accounts and the retention of records. Householder testified that from 1999 to date, records are retained for seven years. (Tr. Vol.II, 6-7; 15). Householder testified:
 (Mr. Harper) If an account is closed, do you know how long the account will remain on the bank's computer database of its accounts?
 A. I don't know for sure how long it's maintained on the database before it's purged. I think it's a year.
 Q. You use the word purged. Can you explain what you mean by that?
 A. Sure. When an account is closed, it only remains on our current system for a certain time period, and then we do what is called a purge of accounts. And then that just purges off any closed accounts that are — like I said, I think it's a year that they're purged off of our system. Then there's reports generated for that which are stored in our report system.
 Q. How long are those reports retained?
 A. Seven years.
(Id. at 16). In addition, Schwarderer testified that signature cards of open accounts are held as long as the accounts are open, and at the time of the closing transaction the signature cards are "pulled and set for retention." (Tr.Vol.III at 13). Moreover, Brewer testified: *Page 18 
 * * * are you aware of any circumstance by which an open account is removed from the system that reflects open accounts without it being closed, that is without it being cashed?
 A. No.
(Tr.Vol.I at 59).
 {¶ 33} Savings Certificate No. 5242, also known as Plaintiff's Exhibit No. 2, was issued to "Maxine Spiller p.o.d. Roberta Stayrook" on June 10, 1975. On cross-examination, Schwaderer testified:
 Q. Would you agree from looking at Plaintiff's Exhibit No. 2 — can you take a look at that.
 Plaintiff's Exhibit No. 2 is in the name of Maxine Spiller payable on death to Roberta Stayrook; is that correct?
 A. Yes.
 * * *
 Q. Does Roberta Stayrook, as a P.O.D. beneficiary, have any ownership interest in that certificate as long as Maxine Spiller is alive? A. Not the way I read it.
(Tr. Vol.III at 11-12).
 {¶ 34} Spiller presented the original certificates of deposit to Sky Bank, who declined to redeem the certificates. Householder and Schwarderer both searched for the certificate accounts, but were unable to locate any records involving the certificates of deposit. (Tr.Vol.II at 23; Vol.III at 8-9). Although Spiller presented the original certificates, Householder and Schwaderer testified that individuals could close certificate accounts without the original certificates. *Page 19 
(Tr. Vol. I at 69; Tr.Vol. III at 5-6). Consequently, the mere fact that Spiller possesses the original certificates does not establish that the certificates had not been previously redeemed.
 {¶ 35} "The lifetime owner of a payable-on-death certificate of deposit (`P.O.D. CD.') has a complete present interest in the account, and may withdraw its proceeds, change the beneficiary, or pledge the P.O.D. CD. as collateral for a loan." Jamison v. Society NationalBank (1993), 66 Ohio St.3d 201, 611 N.E.2d 307, paragraph two of the syllabus. Furthermore, "[a] beneficiary of a P.O.D. CD. has no interest in the proceeds of the P.O.D. CD. until the death of the owner." Id. at 204, citing R.C 2131.10.
 {¶ 36} Certificate Nos. 4346 and 7256 were issued to Stayrook and p.o.d. Spiller, and Certificate No. 6059 was issued to "Spiller or Stayrook." Thus, although Spiller testified that Stayrook consulted her on all financial decisions, Stayrook was the owner of aforementioned three certificates and had the ability to cash in those certificates. As a result, we find that Spiller has failed to meet her burden of proof, under either a clear and convincing evidence or preponderance of the evidence standard, to establish that Certificates Nos. 4346, 7256, and 6059 have not been redeemed.
 {¶ 37} However, Certificate No. 5242 was issued to Maxine Spiller and was payable on death to Roberta Stayrook. The terms of that certificate clearly *Page 20 
establish that Maxine Spiller was the owner of the certificate, and Stayrook was the payable on death beneficiary. As a payable on death beneficiary, Stayrook only had an ownership interest in Certificate No. 5242 upon Spiller's death. See Id. Since Stayrook died before Spiller, Stayrook did not have an ownership interest in Certificate No. 5242, and thus, did not have the authority to redeem the certificate. Moreover, Spiller testified she had not asked the bank to pay on the certificate; she had never given any person power of attorney over her affairs; she never had a guardianship; and she had never received payment of that certificate. (Tr. Vol.III at 49-50). Thus, we find that Spiller has met her burden to prove nonpayment by even a clear and convincing evidence standard as to Certificate No. 5242. Accordingly, we find the trial court properly concluded that Spiller was entitled to the value of Certificate No. 5242 in the amount of $ 26, 832.00.
 {¶ 38} Sky Bank's second assignment of error is, therefore, overruled. Spiller's first assignment of error is overruled.
 CROSS-APPELLANT'S ASSIGNMENT OF ERROR NO. II The Court erred in excluding the testimony of expert witnesses CharlesEarick and Mary Heaston.
 {¶ 39} Spiller maintains, in her second assignment of error, that the testimony of her expert witnesses Charles Earick and Mary Heaston should not have been excluded by the trial court. According to Spiller, Earick and Heaston worked at banking institutions similar in size to Bellefontaine Federal Savings and *Page 21 
Loan, and they know about banking institutions of that size. Further, Spiller maintains that the trial court excluded Earick and Heaston's testimony as fact and expert witness purposes, and if, the trial court did not qualify Earick and Heaston as experts, the trial court should have admitted their testimony as fact witnesses.
 {¶ 40} "A trial court's ruling on the witness's qualification or competency to testify as an expert will ordinarily not be reversed on appeal unless there is a clear showing that the court abused its discretion." Steele v. Buxton, 93 Ohio App.3d 717, 719, 639 N.E.2d 861, citations omitted. An abuse of discretion implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. Blakemore v.Blakemore, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140, citations omitted.
 {¶ 41} Evid.R. 702 provides in pertinent part:
A witness may testify as an expert if all of the following apply:
 (A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
 (B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
 (C) The witness' testimony is based on reliable, scientific, technical, or other specialized information.* * *
 {¶ 42} On January 16, 2007, Sky Bank filed a motion in limine to exclude all of the testimony of Spiller's "purported expert witnesses, Charles Earick and *Page 22 
Mary Heaston." The trial court held a voir dire of Heaston on January 17, 2007 to determine whether Heaston was qualified to testify as an expert. After both sides had questioned Heaston regarding her qualifications, and both sides presented their arguments, the trial court stated:
 THE COURT: The witness is certainly very knowledgeable about the practices of her own institution and maybe those practices are better practices than what was employed here, but the witness is not qualified to say what a regulatory standard or a community standard is. And I think that unless her testimony rises to that level it is not relevant. So I'm going to sustain the motion in limine.
(Tr. Vol. 1, 93).
 {¶ 43} After reviewing the record, we cannot find that the trial court abused its discretion in excluding Heaston's testimony as an expert witness. It is clear that Heaston could testify as to the institution, Perpetual Federal Savings Bank, for whom she has worked for 26 or 27 years. (Id. at 74; 78). However, Heaston also testified that she has never worked at any other financial institutions, that she had no knowledge of other bank's banking procedures, and she had no knowledge as to how other banks handle the opening and closing of certificates of deposit. (Id. at 74; 76). Given Heaston's lack of knowledge regarding other bank's banking procedures, we cannot find the trial court abused its discretion.
 {¶ 44} Earick testified as a fact witness rather than as an expert witness at trial. In his testimony, Earick indicated that he had no formal education in *Page 23 
banking. (Tr. Vol.III, 24). While Earick testified that he worked at Citizens Federal Savings and Loan for thirty-five years, he also testified that he had never worked at any other financial institution. (Id. at 24-25).
 {¶ 45} Given Earick's lack of formal education and the fact that he had never worked at any financial institutions other than Citizens Federal Savings and Loan for thirty-five years, we cannot find that the trial court abused its discretion.
 {¶ 46} Furthermore, Spiller's argument that Earick and Heaston were excluded as both expert and fact witnesses, and the trial court should have at least allowed their testimony as fact witnesses, is without merit for the following reasons.
 {¶ 47} First, Earick did in fact testify at the trial as a fact witness. (Id. at 19-26). Thus, the trial court clearly did not exclude Earick's testimony as a fact witness.
 {¶ 48} Second, there is no indication that Spiller attempted to present Heaston's testimony as a fact witness, or requested that Heaston be allowed to testify as a fact witness.
 {¶ 49} Accordingly, we find that Spiller's second assignment of error is overruled.
 CROSS-APPELLANT'S ASSIGNMENT OF ERROR NO. Ill The Court erred in determining that these Bank certificates of depositwere not negotiable instruments. *Page 24 
 {¶ 50} In her third assignment of error, Spiller asserts that the bank certificates were negotiable instruments. According to Spiller, the certificates of deposit do not contain conspicuous statements indicating that the certificates are not negotiable instruments, thus, the certificates of deposit are negotiable instruments.
 {¶ 51} R.C. 1303.03 provides:
 (A) Except as provided in divisions (C) and (D) of this section, "negotiable instrument" means an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it meets all of the following requirements:
 (1) It is payable to bearer or to order at the time it is issued or first comes into possession of a holder.
 (2) It is payable on demand or at a definite time.
 {¶ 52} The certificates of deposit, in this case, do not contain "pay to the order" or "pay to bearer" language; thus, the certificates do not meet the requirements under R.C. 1303.03(A)(1). Since the certificates of deposit do not meet all of the requirements under R.C. 1303.03, the certificates of deposit are not negotiable instruments.
 {¶ 53} Accordingly, Spiller's third assignment of error is overruled. *Page 25 
 {¶ 54} Having found no error prejudicial to appellant or cross-appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment Affirmed.
 SHAW, P.J., and WILLAMOWSKI, J., concur. r
[1] Bellefontaine Federal Savings and Loan Association was renamed Colonial Federal Savings and Loan Association in 1983. In 1991, Colonial Federal Savings and Loan Association was renamed Colonial Federal Savings Bank, which merged into American Community Bank in 1993. In 1998, American Community Bank merged into The Ohio Bank, which was subsequently renamed Sky Bank-Ohio Bank Region. Thereafter, Sky Bank-Ohio Bank Region was renamed Sky Bank. As a result, Sky Bank is the successor bank to Bellefontaine Federal Savings and Loan Association. (Exhibit F attached to Compl.; Tr. Vol. III, 28-29).
[2] Colonial Federal was of the successors to Bellefontaine Federal Savings and Loan. (Tr. Vol.II, at 22); See footnote one.
[3] American Community bank acquired Colonial Federal in 1993. See footnote one.