STATE OF MAINE                                    SUPERIOR COURT
CUMBERLAND, ss.                                   CIVIL ACTION
                                                  DOCKET NO. CV-08-565

ESTATE OF ORIN PERRY,

       Plaintiff
                                                  DECISION AND ORDER

v.


KEY BANK NATIONAL ASSOCIATION,

       Defendant.

## BEFORE THE COURT

This matter comes before the court on a motion for summary judgment by the

Plaintiff, the Estate of Orin Perry.

## FACTUAL BACKGROUND

*The following facts are undisputed.*

Orin Perry ("Perry") was born in 1918. He and his wife, who passed away in

1983, had two sons, Edward and Daniel. Beginning in 1986, Perry gave numerous

monetary gifts to his loved ones and made significant stock purchases.[1] In the early

1990s, Perry moved in with Therese Wynne ("Wynne"). Wynne may have helped Perry

with his personal and financial papers. Possibly as early as the 1990s, but definitely

before 2003, Perry began exhibiting signs of dementia. Starting in December 2000, there

was a pattern of unusual withdrawals from one of Perry's investment accounts. On April

---

[1] The court notes the Plaintiff's objection to Key Bank's Statement of Material Facts ¶ 58 and
recognizes, for the purposes of this motion, the gifts Perry made from 1986-2002 to his sons in
the amounts of $5,000 and $10,000. It is undisputed that Perry purchased $17,465 in stock in
2001, and $159,065 in stock in 2002.

20, 2001, Perry and Wynne opened a $50,000.00 Certificate of Deposit account ("Account") at Key Bank with Perry's money. The Account was owned by Perry and Wynne in joint tenancy, earning a per annum interest of 2.91%.[2] The Account was governed by a Deposit Agreement[3] and an Account Express Plan ("AEP").[4]

Key Bank initially used an address listed in both Perry's and Wynne's names for the Account. The 2002 1099-Int was addressed to both Perry and Wynne and mailed to the listed address, but only Perry's social security number was listed on the statement. The 2003 1099-Int was again sent to the same address with only Perry's social security number, but this time was only addressed to Wynne. At some point between January 1, 2003 and August 7, 2003 Perry was removed as an owner of the Account. Wynne died on July 12, 2003. On August 7, 2003 Key Bank closed the Account and surrendered the $52,033.52 balance of the Account to the personal representative of Wynne's estate, with no notice mailed to Perry. After Wynne's death Perry seemed incapable of taking care of

---

[2] Perry's federal income taxes were prepared by a C.P.A from 2001-2003. His taxes reflect $637 in interest income from Key Bank in 2002, and $254 in interest in 2003. Perry's C.P.A. also served as his investment counselor during the time of the disputed title change of the Account.

[3] Section 9 of the Deposit Agreement states: "Subject to the statement review provisions contained in Section 10 below, if the signature cards or resolutions related to your Account are unavailable for any reason, you agree that we can rely upon the titling contained in our most recent Account Statement for purposes of determining the ownership of the Account." Section 10 states: "You should review and balance your Account statements promptly after you receive them . . . . If you don't receive an Account statement by the date when you usually receive it, call us at once. You must review your statements to make sure that there are no errors in the Account information . . . . You must notify us as soon as possible after receiving your Account statement if you believe there is an error or irregularity of any kind, including any unauthorized signature, lack of signature or alteration. You agree that fourteen (14) days after we mailed a statement (or otherwise made it available to you) is a reasonable amount of time for you to review your Account statement and report and errors or other irregularities . . . ."

[4] The AEP states that it is the signature card for all accounts under the plan.

himself, and moved in with his son Daniel Perry.[5] Perry died on November 15, 2008 and the Estate of Orin Perry ("Plaintiff") was substituted as Plaintiff.

Key Bank procedures require both owners of an account to sign an "Authorization to Remove Signer from an Individual Account" form ("80-1603X") in order to document and confirm an owner's intentional relinquishment of the Account. After signing the 80-1603X, Key Bank procedures then require the new sole owner to execute and deliver to Key Bank a new Account Express Plan as the sole owner of the Account. After both of these steps are complete, the Key Bank branch then forwards both the 80-1630X form and the new Account Express Plan forms to the Key Bank AEP Imaging department. The Key Bank branch then places message restrictions and account remarks on the Account stating that the client has been removed from the account. Message restrictions have a default length of 60 days, at which point they are automatically purged unless a longer expiration date has been manually set. Similarly, account remarks are also set with an expiration date, with Key Bank procedures recommending five business days for the customer record to reflect changes. Employees then manually remove the account remarks once it is verified that the name has been removed from the Account if they have not already expired.[6] The procedures concerning the length of time that message restrictions and account remarks are maintained in the records conforms to the standards used by other banks in Ohio and Maine, the short times used to minimize the possibility of fraudulent activity during the five day period it might take for customer records to

---

[5] Daniel Perry told his brother Edward Perry on numerous occasions that he could convince his father to do anything he wanted. In 2006 Perry, through his son Edward acting as his attorney in fact, brought a civil action against Daniel and Daniel's wife alleging a breach of fiduciary duty to Perry by misappropriating his money. The lawsuit against Daniel and Daniel's wife was dismissed by stipulation.

[6] The court overrules Plaintiff's objection to DSMF ¶ 70 as it serves merely to explain the account remark procedures that both parties refer to at numerous points throughout their briefs.

3

reflect titling changes. After the 80-1603X and new AEP are complete, the signer must then be removed by completing a TCS2 KeyForms Free Form action item-also known as the TGS2.[7]

Key Bank is unable to locate the original or copy of an 80-1630X form signed by Perry, or an original or copy of an Account Express Plan signed by Wynne demonstrating her sole ownership of the account. Key Bank is also unable to locate records of account remarks or message restrictions, although Key Bank notes that this is not possible due to the fact that they expire after a set time period as stated above. Although the TGS2 report was purged twelve to eighteen months after it was made, Key Bank produced a different report that reflects a TGS2 request sent by a Key Center to the CAM to remove Perry as an owner on the Account with an effective date of January 23, 2003.

*The following facts are disputed.*

Key Bank alleges that Sections 9 and 10 of the Deposit Agreement[8] conform to standards used by other banks in both Ohio and Maine, while the Plaintiff contends that these provisions do not meet the standard of ordinary care that Key Bank must use when determining account ownership. DSMF/PSMF ¶ 52. Key Bank also contends that Perry was an owner on the Account only during the period of time that both he and Wynne were titled as joint owners, while the Plaintiff alleges that Perry never instructed Key

---

[7] The Plaintiff objects to DSMF ¶ 67, explaining how the TGS2 works, pursuant to Rule 56(h). Since the Plaintiff subsequently admits DSMF ¶ 68, which references the TGS2, the court overrules the objection and notes that the explanation of the TGS2 process is as follows:
The TGS2 is a computer program used to initiate inquiry-type requests for changes on Key Bank's retail customer accounts by generating a work order to the Customer Account Maintenance group ("CAM") in Ohio. The CAM would then make the changes, as they are the only group authorized to remove signers on accounts. The CAM prints out batch reports twice daily with requested changes, and once completed these batches are destroyed. The record of the changes is maintained in the system for a period of twelve to eighteen months.
[8] *See supra* ftnt. 3.

4

Bank to remove his name from the Account, therefore he was always a lawful owner. DSMF/PSMF ¶ 53. Key Bank concludes that since the Account monthly statement was in Wynne's name only from January 2003 until August 2003, she was the sole owner of the Account, while the Plaintiff concludes that since Perry never instructed Key Bank to relinquish his ownership in the Account, regardless of the fact that only Wynne's name was on the 2003 statement, he was still a joint owner of the account. DSMF/PSMF ¶ 73.

## PROCEDURAL HISTORY

In September 2008, Perry filed a civil action against Key Bank, asserting claims for a declaratory judgment that there exists a real and justiciable controversy (Count 1), breach of contract (Count 2), breach of fiduciary duty (Count 3), and negligence (Count 4). Key Bank filed an answer, denying liability on all counts. In November 2008 Perry died and his probate estate was substituted as Plaintiff. On or about March 10, 2009, the Plaintiff filed a motion for summary judgment on the negligence claim accompanied by statements of material fact ("PSMF"). Key Bank filed a motion to extend the deadline to oppose summary judgment, which this court granted in an Order dated March 27, 2009. Key Bank filed an additional unopposed motion to enlarge the deadline to oppose summary judgment to June 8, 2009, which the court granted. On June 8, 2009 Key Bank filed an opposition to the defendant's motion for summary judgment, opposing statements of material fact, and additional statements of material fact ("DSMF"). The Plaintiff filed a reply memorandum and responded to Key Bank's statement of additional material facts. On June 12, 2009 Key Bank filed a response to Plaintiff's objections in its reply statement. For the reasons discussed below, this court holds that there exists an

5

issue of material fact as to whether Key Bank breached their duty of care, and the Plaintiff's motion is therefore denied.

## DISCUSSION

### I.  Choice of Law

The terms of the Deposit Account Agreement provide that Ohio law and applicable federal law govern the Account.

### II.  Standard of Review.

Summary judgment is proper where there exist no genuine issues of material fact such that the moving party is entitled to judgment as a matter of law.  Ohio R. Civ. P. 56(c); *Brentlinger v. Bank One of Columbus*, 782 N.E.2d 648, 651 (Ohio Ct. App. 2002). Accordingly, summary judgment is appropriate only where: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party. *Tokles & Son, Inc. v. Midwestern Indemn. Co.*, 605 N.E.2d 936 (OH, 1992) (citing *Harless v. Willis Day Warehousing Co.*, 375 N.E.2d 46 (OH, 1978)). "The moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." *Dresher v. Burt*, 662 N.E.2d 264 (OH, 1996).  Once the moving party meets its initial burden, the nonmovant must then produce competent evidence showing that there is a genuine issue for trial. *Id.*  Summary judgment is a procedural device to terminate litigation, so it must be awarded cautiously with any doubts resolved in favor of the

6

nonmoving party. *Murphy v. Reynoldsburg*, 604 N.E.2d 138 (OH, 1992).

### III.    Negligent Removal From Account

The Plaintiff has moved for summary judgment on the basis that there are no material facts in dispute about Key Bank's negligent removal of Perry from the account, thus the remaining issues are matters of law only to be resolved by the court. Under Ohio law, in order to prevail on a claim of negligence the Plaintiff must prove that Key Bank owed a duty to Perry, that the duty was breached, an injury resulted, and that the breach of the duty proximately caused the injury. *Huntington Nat'l Bank v. Kazmaier*, 885 N.E.2d 314, 317 (OH, 2008) (citing *Armstrong v. Best Buy Co., Inc.*, 788 N.E.2d 1088, 1090 (OH, 2003)). Banks owe their account customers a duty to act in good faith and exercise ordinary care. OHIO REV. CODE ANN. §1304.03. Ordinary care is defined as "observance of the reasonable commercial standards that are prevailing in the area in which the person is located with respect to the business in which the person is engaged . . . ." OHIO REV. CODE ANN. §1303.01. Parties "cannot disclaim a bank's responsibility for its lack of good faith or failure to exercise ordinary care or limit the measure of damages for the lack or failure." OHIO REV. CODE ANN. §1304.03. For the purposes of this motion, the issue is whether Key Bank breached their duty to observe reasonable commercial banking standards by removing Perry's name from the Account.

The Plaintiff alleges that Key Bank breached their duty by wrongfully removing Perry's name from the Account, which resulted in the wrongful pay out to Wynne's estate. *Plaintiff's Motion for Summary Judgment* at 6. The Plaintiff points to various facts in the record to support the motion. The Plaintiff contends that Key Bank's practice of relying on the title of the Account to determine ownership does not conform to the

7

ordinary standard of care. The Plaintiff further alleges that the presence of Perry's social security number on the Account 1099s in the years 2002-2003 demonstrates that he was still a rightful owner regardless of the titling, thus removal of his name was a breach of Key Bank's duty. The Plaintiff also draws attention to Key Bank's inability to provide complete documentation of Perry's alleged intentional relinquishment of the Account as evidence of breach. The Plaintiff alleges that this lack of documentation renders Key Bank unable to prove that Perry relinquished his rights to the Account and further, that the failure to retain the documents for the statutorily prescribed time was a breach in and of itself.

Key Bank alleges that they have not breached their duty to Perry as defined in the Deposit Account Agreement, which they allege is in accordance with the Code. *See* OHIO REV. CODE ANN. §1304.03(a) (stating that "parties may determine by agreement the standards by which the bank's responsibility is to be measured if those standards are not manifestly unreasonable"). The Deposit Agreement states that Key Bank can rely upon the titling in the Account statement for purposes of determining Account ownership if the signature cards of the Account are unavailable. According to Key Bank, the Deposit Account Agreement sets a standard that conforms with national standards. DSMF ¶ 51, 52. Key Bank's Deposit Agreement provides further language instructing clients to inform their local branch if there is an error or irregularity. *Id.* Key Bank also states that they are not required to produce all documentation of Perry's relinquishment of the Account, and that their production of the TGS2 conclusively shows, or at the very least creates an issue of material fact, that Perry intentionally relinquished his rights to the Account.

8

In light of the parties dispute regarding the applicable duty and whether and to what extent it was breached, the court concludes that there is a triable issue of material fact as to whether Key Bank exercised reasonable care in removing Perry's name from the Account. *See e.g. Shamansky v. Massachusetts Fin. Servs. Co.*, 713 N.E.2d 47, 50 (Ohio App. Ct. 1998).

A. Failure to Follow Internal Procedures

The Plaintiff contends that Key Bank did not follow its own procedures for removing a client from an account as evidenced by the lack of documentation of a 80-1360X form or new Account Express Plan, and therefore Key Bank breached their duty to Perry by removing him from the Account. The Plaintiff also alleges that by not retaining the documents related to Account relinquishment Key Bank was in violation of the Code, further demonstrating their negligence. *See* OHIO REV. CODE ANN. §1109.69 (stating that "[s]ignature cards relating to closed demand, savings, or time accounts, closed safe deposit accounts, and closed safekeeping accounts, after date of closing"); *see also Spiller v. Sky Bank*, 910 N.E. 2d 1021 (OH, 2009) (stating that [w]hen an action on an account against a bank is based on or depends on the contents of records that the bank is required to maintain, the action must be asserted within" the set statutory time). The Plaintiff further alleges that, pursuant to Ohio's Rules of Evidence, the lack of the signature card affirmatively establishes that Perry did not sign the account over to Wynne. *See* OHIO R. EVID. 803(7). Despite the statute's clear mandate that the Bank retain certain documents for a set amount of time, the court notes that this motion for summary judgment is not based on Key Bank's failure to retain documents, but rather is on whether Key Bank breached their duty to Perry by removing him from the Account

9

and paying the proceeds of the Account to Wynne.[9] Although violation of statute may provide evidence of negligence, violation of §1109.69 is not negligence per se, thus the court must determine whether there is an issue of material fact precluding summary judgment.[10]

Key Bank states that there are multiple steps that branches must take when removing signers on accounts, and that "Key Bank took some of these steps." *See Defendant's Memorandum in Opposition to Plaintiff's Motion for Summary Judgment*, at 7. Although Key Bank was not able to produce a new Account Express Plan signifying Wynne as the sole owner of the Account they did produce a TGS2 form they state would not have been made unless Perry requested to be removed from the Account. Therefore, the production of the TGS2/Key Forms Free action item, when viewed in the light most favorable to Key Bank, casts a reasonable doubt as to whether Perry intentionally relinquished his rights to the Account. The court holds that this establishes an issue of material fact as to whether Key Bank was negligent in removing Perry's name from the Account, resulting in the Account payout to Wynne's estate.

The court finds that, as to the ultimate issue as to whether Key Bank breached their duty to Perry by negligently removing his name from the Account, there is an issue

---

[9] The court notes that it is doubtful that the Plaintiff would have a cause of action under § 1109.69 if this case were solely based on Key Bank's failure to maintain records. *See generally Nielsen, et, al. v. Ford Motor Company*, 681 N.E.2d 470, 474 (Ohio Ct. App. 1996) (stating that "[i]n determining whether statutes may create a private cause of action for enforcement, the Ohio Supreme Court has held that a "statutory policy" may not be implemented by the Ohio courts in a private civil action absent a clear implication that such a remedy was intended by the Ohio Legislature. . . . A private cause of action does not exist for every question or issue.").

[10] In Ohio, "[s]tatutory negligence, or negligence per se exists when: (1) a legislative enactment imposes upon a person a specific duty to do or refrain from doing a specific act, and (2) the legislature intended the statute for the protection of the plaintiff and others similarly situated." *See Alexander v. Culp*, 705 N.E.2d 378 (Ohio App. Ct. 1997) (internal citations excluded); *see also supra* note 9.

10

of material fact as to whether Perry did indeed request to be removed from the Account, and therefore the motion for summary judgment is denied.

## CONCLUSION

The motion for summary judgment is therefore DENIED. The clerk shall incorporate this Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

DATED: November 9, 2009

Joyce A. Wheeler, Justice

ESTATE OF ORIN PERRY VS KEY BANK NATIONAL ASSOCIATION
UTN:AOCSsr  -2008-0111078                    CASE #:PORSC-CV-2008-00565
-----------------------------------------------------------------------
SEL VD                            REPRESENTATION TYPE      DATE
01 0000003017 ATTORNEY:HOCHMAN, BRUCE
ADDR:477 CONGRESS STREET 14TH FLOOR PO BOX 15215 PORTLAND ME 04112-5215
    F FOR:KEY BANK NATIONAL ASSOCIATION        DEF        RTND   11/12/2008

02 0000003871 ATTORNEY:WALSH, NICHOLAS H
ADDR:111 COMMERCIAL STREET PORTLAND ME 04101-4719
    F FOR:ORIN F PERRY (ESTATE OF)             PL         RTND   10/01/2008




        Enter Option: A=Add, B+Sel=Browse, M=More, R+Sel=RltnEdit:

Select the EXIT KEY for page selection line.