[Cite as *Paul v. PNC Bank Natl. Assn.*, 2022-Ohio-672.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| ROGER PAUL, | : | APPEAL NO. C-210261 |
| | | TRIAL NO. A-1902624 |
| Plaintiff-Appellant, | : | |
| | | |
| vs. | : | *O P I N I O N.* |
| | | |
| PNC BANK, NATIONAL ASSOCIATION, | : | |
| | | |
| Defendant-Appellee. | : | |

Civil Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  March 9, 2022

*Aronoff, Rosen, and Hunt, LPA,* and *Daniel A. Perry*, for Plaintiff-Appellant,

*Dinsmore & Shohl, LLP,* and *R. Samuel Gilley*, for Defendant-Appellee.

**ZAYAS, Judge.**

{¶1}    Plaintiff-appellant Roger Paul brings this appeal to challenge the trial court's grant of summary judgment in favor of defendant-appellee PNC Bank, National Association ("PNC").   For the following reasons, we overrule the three assignments of error and affirm the judgment of the trial court.

### Factual Background

{¶2}    On July 15, 2005, plaintiff-appellant Roger Paul opened a safe deposit box ("the box") at PNC's Symmes Township branch location.  He executed a lease agreement for the box, which listed an annual rental fee of $35.  The lease was "for a period of one year," but also contained the following provision:

> At the expiration of this lease, it may be renewed for a further term of one year, and thereafter from year to year upon the same general terms, conditions and agreements as are herein contained and at the Lessor's then current rental charge.  If a renewal lease in writing shall not be executed, then this instrument shall of itself operate as or be held to be a renewal or successive renewal hereof, subject to the right of cancellation as herein provided.

Additionally, the lease contained a provision which authorized the annual rental fee to be debited from Paul's "SAV" account, beginning on July 15, 2006.  PNC reserved the right to cancel the lease after ten days written notice to Paul.

{¶3}    Paul asserted that, upon the opening of the box, he deposited several items in the box for safekeeping including two rings, a ten-ounce gold bar, a survivor's affidavit, and a Krugerrand.  He averred that the first payment for the box was made by check on July 15, 2005, and the second payment for the box was automatically debited from his checking account on July 17, 2006.  Paul claimed the

remaining annual lease payments were waived by PNC after he opened an investment account with PNC.

{¶4} On March 29, 2019, Paul entered the PNC branch location to review the contents of the box and was informed by an employee of PNC that he was not the listed owner of the box. Additionally, he was informed that PNC had no records that ever showed him as the owner of the box. Paul was instructed to contact the Ohio Division of Unclaimed Funds, which informed him that it had no record of any property belonging to him.

{¶5} Paul denied ever receiving notice from PNC that his lease had been cancelled for any reason. He did not recall receiving regular account statements for the box but claimed that he was never under the impression that he would receive statements as PNC had represented to him that the annual fee for the box would be waived.

**Procedural History**

{¶6} On May 31, 2019, Paul filed a complaint against PNC, alleging several causes of action based on the lease and the contents of the box. On November 10, 2020, Paul moved for summary judgment, arguing that no genuine issues of material fact existed and that he was entitled to judgment as a matter of law on his claims. PNC moved for summary judgment on December 2, 2020, arguing that Paul's claims were time-barred pursuant to R.C. 1109.69(F). After holding a hearing, the trial court granted summary judgment in PNC's favor on March 25, 2021, finding that the claims were time-barred by R.C. 1109.69(F). Paul timely filed his notice of appeal on April 22, 2021. He now raises three assignments of error for our review.

3

## Law and Analysis

### *First Assignment of Error*

{¶7}   In his first assignment of error, Paul argues that the trial court erred by granting summary judgment in favor of PNC because the trial court indicated at the hearing that the case was not appropriate for summary judgment.  Specifically, Paul argues, "The trial court cannot, during a hearing, state that this case needed to be decided by the trier of fact and is not ripe for summary judgment, and then a few weeks later grant summary judgment in a manner which completely contradicts the trial court's record."

{¶8}   First, the record does not reflect that the trial court decided at the hearing that the case was inappropriate for summary judgment.  Rather, the record reflects that the trial court questioned the parties in the middle of the hearing on why this case was not a case that depended solely on credibility determinations, and then counsel for PNC argued why the case was appropriate for summary judgment.  At the conclusion of the hearing, the trial court informed the parties that it was going to review the cases discussed by the parties and then make a ruling.  Thus, the trial court did not make a definitive decision on this case during the hearing.

{¶9}   Additionally, even if the court had decided at the hearing that this case was inappropriate for summary judgment, the trial court was free to change its mind before making its journal entry.  *See State v. Hankins*, 89 Ohio App.3d 567, 569, 626 N.E.2d 965 (3d Dist.1993), citing *State ex rel. Ruth v. Hoffman*, 82 Ohio App. 266, 80 N.E.2d 235 (1st Dist.1947) ("Because the court has not spoken until its journal entry is filed, a judge can change his or her mind before making a journal entry without giving the parties grounds to appeal."); *see also State v. Brown*, 3d Dist. Allen No. 1-06-66, 2007-Ohio-1761, ¶ 3, citing *State v. Scovil*, 127 Ohio App.3d 505,

713 N.E.2d 452 (8th Dist.1998) ("A trial court speaks only through its journal entries and not by oral pronouncement."); *Schenley v. Kauth*, 160 Ohio St. 109, 111, 113 N.E.2d 625 (1953) ("The rule is well established in this state that a court of record speaks only through its journal and not by oral pronouncement or a mere minute or memorandum." (Citation omitted.)). Therefore, this assignment of error is overruled.

*Second and Third Assignments of Error*

{¶10} In his second assignment of error, Paul argues that the trial court erred in granting summary judgment because it improperly applied R.C. 1109.69 and the relevant case law, and improperly applied the summary-judgment standard. In his third assignment of error, Paul argues that the trial court erred in granting summary judgment because it improperly made an inference that the safe deposit box was voluntarily closed. As Paul's second and third assignments of error are interrelated, we address them together.

{¶11} In relevant part, R.C. 1109.69 provides:

(A) Unless a longer record retention period is required by applicable federal law or regulation, each bank shall retain or preserve the following bank records and supporting documents for only the following periods of time:

(1) For one year:

* * *

(c) Ledger records of safe deposit accounts, after date of last entry on the ledger;

* * *

(2) For six years:

\* \* \*

(f) safe deposit access tickets and correspondence or documents relating to access, after their date;

(g) Lease or contract records relating to closed safe deposit accounts, after date of closing;

(h) Signature cards relating to closed demand, savings, or time accounts, closed safe deposit accounts, and closed safekeeping accounts, after date of closing;

\* \* \*

(B) The superintendent of financial institutions may designate a retention period of either one year or six years for any record maintained by a bank but not listed in division (A) of this section. Records that are not listed in division (A) of this section and for which the superintendent has not designated a retention period shall be retained or preserved for six years from the date of completion of the transaction to which the record relates or, if the last entry has been transferred to a new record showing the continuation of a transaction not yet completed, from the date of the last entry.

\* \* \*

(E) A bank may dispose of any records that have been retained or preserved for the period set forth in division (A) and (B) of this section.

(F) Any action by or against a bank based on, or the determination of which would depend on, the contents of records for

which a period of retention or preservation is set forth in divisions (A) and (B) of this section shall be brought within the time for which the record must be retained or preserved.

{¶12} In *Abraham v. Natl. City Bank Corp.*, 50 Ohio St.3d 175, 553 N.E.2d 619 (1990), the plaintiff, Abraham, opened a passbook savings account at Capital National Bank in October 1969. *Id.* at 175. Two sentences at the bottom of the page where deposits were to be recorded in the passbook instructed that the passbook be presented when money is deposited or withdrawn and instructed that the bank must be notified if the passbook was lost or stolen. *Id.* The last entry in the passbook was dated September 30, 1972. *Id.* Shortly after this date, Abraham misplaced the passbook. *Id.* She did not notify the bank that the passbook was lost and claimed that she did not attempt thereafter to deposit or withdraw money without the passbook. *Id.* Abraham found the passbook in 1985. *Id.* Capital National Bank was acquired by BancOhio in 1973, which was acquired by National City Bank in 1984. *Id.* Abraham inquired through her attorney about the status of the account at National City Bank. *Id.* "National City had no internal records of the account, except for a January 4, 1977, microfilm list of open accounts from Capital National Bank on which Abraham's account does not appear." *Id.* National City Bank concluded that the account was closed sometime between late 1972 and January 1977. *Id.* It was verified that the money did not escheat to the state. *Id.*

{¶13} Abraham filed a complaint against National City in May 1986. *Id.* The trial court granted, and the court of appeals affirmed, summary judgment in favor of National City based on former R.C. 1101.08(F), now R.C. 1109.69(F). *Id.* at 176. The Ohio Supreme Court agreed. *Id.* at 177. The court stated:

The intent and language of R.C. 1101.08(F) are clear. A bank would be foolish to destroy its records after six years in reliance on R.C. 1101.08(E) without the assurance provided in R.C. 1101.08(F) that it will not thereby leave itself open to litigation without the documents necessary to defend itself.

Without its internal records, National City can only speculate about how and by whom Abraham's funds were removed from her account. Indeed the records might show that the Bank was at fault. Abraham contends that the passbook plus her testimony should be sufficient to bring her case before a jury. The problem is that the passbook proves only that the account existed; it does not explain how the funds were removed from the account. Only the internal bank records could explain it. Because these internal bank documents are crucial evidence in Abraham's action and because without them the bank is unable to defend itself in this lawsuit, this is an action '* * * the determination of which would depend upon, the contents of records * * *' that R.C. 1101.08(E) authorized the bank to destroy. Therefore, R.C. 1108.08(F) applies to the facts of this case and mandates its dismissal.

(Ellipses sic.) *Id.*

{¶14} In *Spiller v. Sky Bank-Ohio Region*, 122 Ohio St.3d 279, 2009-Ohio-2682, 910 N.E.2d 102, the plaintiff, Spiller, discovered an envelope, which contained four certificates of deposit, while moving a dresser that belonged to her friend, Stayrook, who had passed away several months earlier. *Id.* at ¶ 3. The two has been friends since 1936. *Id.* at ¶ 4. Spiller was privy to Stayrook's finances. *Id.* She

"knew the certificates existed and believed that Stayrook had never redeemed them." *Id.* One of the certificates, issued to Spiller and payable on death to Stayrook, was at issue in the appeal. *Id.* at ¶ 5. The defendant, Sky Bank, was the successor to the bank that originally issued the certificates. *Id.* at ¶ 6. Sky Bank refused to pay the certificates when presented by Spiller. *Id.* Employees of Sky Bank searched but were unable to find any open accounts or records for Spiller or Stayrook. *Id.* Sky Bank had a policy which permitted customers to keep the paper certificate after redeeming the certificate of deposit. *Id.* at ¶ 7. Sky Bank maintained that the certificates must have been redeemed and the pertinent records must have been disposed of. *Id.*

{¶15} Spiller sued Sky Bank. *Id.* at ¶ 8.[1] The trial court denied Sky Bank's motion for summary judgment and, after a bench trial, awarded judgment in favor of Spiller on the certificate issued solely to her. *Id.* at ¶ 9-10. The court of appeals affirmed the decision of the trial court, holding that the bank was not authorized by statute to destroy records of the certificates because the certificates renewed automatically and thus R.C. 1109.69 did not apply to bar the suit. *Id.* at ¶ 11. The Ohio Supreme Court disagreed. *Id.* at ¶ 12. The court stated:

> Spiller has only the original paper certificate issued in 1975 and her testimony to prove the existence of the deposit. Sky Bank has produced an all-accounts list that indicates that no such account existed in 1993. The absence of any record of Spiller's account as of December 31, 1992, raises an inference that the account was closed at some time between 1975 and December 31, 1992. Spiller cannot explain when, why, or how the account terminated; only the bank's

---

[1] The decision of the court of appeals shows that the complaint was filed on March 15, 2005. *Spiller v. Sky Bank*, 3d Dist. Logan No. 8-07-03-2008-Ohio-1338, ¶ 4.

internal records could do that. Accordingly, this is a lawsuit 'based on, or the determination of which, would depend on, the contents of records' retained pursuant to R.C. 1109.69(A) or (B).

* * *

Under R.C. 1109.69(A) or (B), certain records must be maintained for one year or six years following the closing of an account or date of last entry. Under either subsection, the record-retention period has passed in this case. The all-accounts list for 1993 indicates, by absence of Spiller's name, that the account was closed on or before December 31, 1992. Accordingly, the bank was permitted under R.C. 1109.69(E) to discard any records of the account on January 1, 1999, at the latest. Spiller's suit is therefore time-barred by R.C. 1109.69(F).

*Id.* at ¶ 15, 18, citing R.C. 1109.69(F) and *Abraham*, 50 Ohio St.3d at 177, 553 N.E.2d 619.

{**¶16**} PNC argues that *Abraham* and *Spiller* are dispositive in this case. To be sure, the evidence presented in both cases showed key commonalities that the Ohio Supreme Court found to be important: (1) the plaintiffs presented "stale evidence of money deposited with a bank and testified that the money had never been withdrawn," (2) the defending banks "lacked any records of any such account *and* provided a list of customers who had open accounts as of a date more than six years prior to the plaintiff's claim, and the plaintiff's name was not on that list," (3) the plaintiffs did not recall receiving any correspondence from the bank regarding the account; (4) the money did not escheat to the state as abandoned funds; and (5) the account had no fixed termination date. (Emphasis added.) *Spiller* at ¶ 13.

{¶17} The instant case is similar to *Abraham* and *Spiller* in most regards but distinct in one important way. Here, we do not have a list of open safe deposit accounts as of a date more than six years prior to Paul's claim which does not include his name. This is significant because the list of open accounts in both cases acted as evidence from which a permissible inference could be drawn that the account in question in each case was closed more than six years from the time the plaintiffs brought suit. Thus, we must determine whether PNC presented any comparable evidence from which the trial court could properly infer that the safety deposit box was closed more than six years prior to the filing of the present litigation, thereby making summary judgment appropriate.

{¶18} We hold that it did. When moving for summary judgment, PNC included an affidavit of Stephanie Murdock, a loss prevention advisor at PNC. In the affidavit, Murdock averred that she was familiar with the business records regularly kept by PNC with respect to safety deposit boxes and avowed that she was competent and authorized to make the affidavit on behalf of PNC. Murdock asserted that, regarding safety deposit boxes, PNC retains and preserves the following for a period of seven years: (1) safe deposit access tickets and correspondence or documents relating to access, after their date; (2) lease or contract records relating to closed safe deposit accounts, after the date of closing; and (3) signature cards relating to closed safe deposit accounts, after date of closing. After expiration of the seven years, PNC's policy is to purge the records.

{¶19} Murdock stated, "Consistent with its standard banking practices, PNC searched its safe deposit box and escheatment records for any information regarding the Safe Deposit Box and lease. Specifically, PNC viewed box rented reports for the past 7 years, reviewed open and closed contracts at the branch, and contacted

11

escheat department." She avowed that PNC does not have: (1) any record of Paul's safe deposit box lease; (2) any record that Paul renewed his safe deposit box lease after its initial term; (3) any records regarding expiration or termination of Paul's safe deposit box lease; (4) any records of Paul's payment of rental fees under the lease; (5) any records explaining when, why, or how Paul's lease terminated and whether the box contained property at the time; or (6) any records explaining when, why or how any property was removed and processed, if the box contained property at the time of expiration or termination.

{¶20} She further asserted the following: (1) if the lease was not renewed after its initial term, PNC would have purged its records of closure and disposition of the box no later than August 2014; (2) if Paul removed the contents of the box and terminated the lease or any renewal of the lease prior to April 2012, PNC would have purged its records prior to May 2019; (3) if PNC terminated the lease or any renewal thereof and disposed of the contents of the box prior to April 2012, PNC would have purged its records prior to May 2019; and (4) if Paul exchanged the box for any other box at any point prior to April 2012, PNC would have purged its records of the same prior to May 2019.

{¶21} Murdock confirmed that PNC also checked its "escheat reporting system" and digital records, dating back to 2012, to determine whether the contents of the box had escheated to the state, and PNC had no records indicating that the contents of the box escheated to the state. She concluded that the absence of any records, "means that the Safe Deposit Box Lease, or any renewal thereof, expired or was terminated at some point prior to April 2012."

{¶22} This evidence was sufficient for the trial court to make a permissible inference that the safety deposit box account must have closed more than six years

prior to the complaint being filed in this action. Paul attempts to contradict this evidence by arguing that a fee charged to his checking account in 2016 after he closed his investment account showed that PNC charged his account for the safety deposit box fee in 2016. However, the evidence in the record does not support this assertion. The record contains 2016 printouts from PNC associated with Paul's checking account. These documents reflect two charges to his checking account. The first charge of $20 was posted on September 20, 2016, and is described as a "calculated service charge." The second charge of $36 was posted on September 23, 2016, and is described as an "OD FEE CK# 2885." Both charges were refunded to Paul's account on September 23, 2016. The comment regarding the refund for the first charge stated, "customer was not aware that he would receive a $20 [sic] in his checking when he closed his PNCI account." The comment regarding the refund for the second charge stated, "customer is furious over this fee – he would not have been overdrawn if we didn't charge him a service fee and we charg [sic] service fee because he closed his PNCI account." PNC submitted a supplemental affidavit of Stephanie Murdock to explain these documents. Murdock explained that the records "reflect two debits and refund of the same to Plaintiff's DDA Account * * *," and averred that the fees "have no relation to Plaintiff's Safe Deposit Box Lease." Paul did not submit any evidence to the contrary. Thus, this evidence does not prevent an inference that the safety deposit box account must have closed more than six years prior to the complaint being filed.

{¶23} We are not unsympathetic to the harsh result this statute creates. However, as the Ohio Supreme Court recognized in *Abraham*, it a problem that only the legislature can solve. *Abraham*, 50 Ohio St.3d at 178, 553 N.E.2d 619. And while we are understanding of Paul's arguments that this case presents the very concerns

13

discussed in the dissenting opinions in *Abraham* and *Spiller*, the majority opinions are the controlling law, and we are bound to follow them. *See, e.g., State v. Stewart*, 2d Dist. Miami No. 2016-CA-13, 2017-Ohio-2785, ¶ 12. Because we find that the determination of all of Paul's claims would depend on the contents of records that PNC was authorized to destroy, we hold that the trial court properly granted summary judgment in favor of PNC as Paul's claims were time-barred by R.C. 1109.69(F). Paul's second and third assignments of error are overruled.

### Conclusion

{¶24} Having overruled the three assignments of error, we affirm the judgment of the trial court.

Judgment affirmed.

**MYERS, P.J.,** and **BOCK, J.,** concur.

Please note:

The court has recorded its own entry this date.